*Jeffrey Beahm v. Erie Insurance Exchange*, No. 1832, September Term 2022. Opinion by Harrell, J.

**INSURANCE COVERAGE – UNDERINSURED MOTORIST COVERAGE – COMMERCIAL AUTOMOBILE POLICY – NEGLIGENT MISREPRESENTATION BY INDEPENDENT INSURANCE AGENT**

Insurer, who issued a commercial automobile liability insurance policy to a corporation, denied underinsured motorist coverage to the sole owner of the corporation on the ground that he did not qualify for underinsured motorist coverage under the terms of the policy. Owner of the corporation filed suit against the insurer for breach of contract and negligent misrepresentation based on statements made by an independent insurance agent with whom he dealt. At the close of the plaintiff's case, the Circuit Court for Anne Arundel County granted judgment in favor of the insurer on both counts. The court found that the insurance policy was issued to the company, not to the owner of the company individually. It determined that there was not sufficient evidence that the business owner was covered under the policy to generate a question of fact for the jury. As for the claim of negligent misrepresentation, the court found that the business owner failed to produce evidence of a duty of care and a breach of that duty.

**HELD:** The individual plaintiff was not entitled to coverage under his company's commercial automobile liability insurance policy. He failed to establish that the insurer had any ownership or control over the independent insurance agency or its agent or that statements made by the agent could be attributed to the insurer.

Circuit Court for Anne Arundel County
Case No: C-02-CV-20-002290

REPORTED

IN THE APPELLATE COURT

OF MARYLAND

No. 1832

September Term, 2022

_____

JEFFREY BEAHM

v.

ERIE INSURANCE EXCHANGE

_____

Leahy,
Albright,
Harrell, Glenn T., Jr.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Harrell, J.
_____

Filed: January 30, 2024

Jeffrey Beahm, appellant, filed in the Circuit Court for Anne Arundel County a complaint asserting a claim for negligence against Zacharia Smith and a claim for breach of contract against Erie Insurance Exchange ("Erie"), the latter being the appellee here. Later, Beahm was granted leave to file an amended complaint which added a claim of negligent misrepresentation against Erie. Eventually, Beahm dismissed voluntarily his negligence claim against Smith. A jury trial on the remaining claims was held on 6-7 December 2022. At the close of Beahm's case, the court granted judgment in favor of Erie on the breach of contract and negligent misrepresentation counts. Beahm filed timely a notice of appeal and, four days later, Erie filed a cross-appeal.

## ISSUES PRESENTED

Beahm presents the following questions for our consideration:

I. Whether the circuit court erred as a matter of law in granting Erie's motion for judgment at the close of the evidence offered by Beahm in a jury trial, given he was covered under the Erie insurance policy and sufficient evidence existed to permit the jury to decide the breach of contract claim; and,

II. Whether the circuit court erred as a matter of law in granting Erie's motion for judgment at the close of the evidence offered by Beahm in a jury trial, where sufficient evidence existed to permit the jury to decide the question of negligent misrepresentation.

In its cross-appeal, Erie presents a sole question for our consideration:

Whether the circuit court abused its discretion when it permitted Beahm to amend his complaint to add a new count of negligent misrepresentation near the close of discovery, and then by denying Erie's motion to issue additional interrogatories and to re-depose Beahm as to his new negligent misrepresentation count.

For reasons to be explained, we shall affirm the judgment of the circuit court. We need not answer the question presented in Erie's cross-appeal.[1]

## FACTUAL AND PROCEDURAL BACKGROUND

On or about 1 August 2020, Beahm suffered serious injuries when he, as a pedestrian, was hit by a vehicle that was owned and operated by his nephew, Zacharia Smith. The incident occurred as Smith was leaving a birthday party, in honor of Beahm's wife, that was held at the home of the couple. As a result, Beahm was hospitalized for about eight days at the University of Maryland R. Adams Cowley Shock Trauma Center ("Shock Trauma"). He had subsequent surgeries at both Shock Trauma and the Baltimore-Washington Medical Center and received follow-up medical treatment from various health care providers.

At the time of the incident, Beahm was the sole owner of an information technology consulting firm known as Starboard Business Technologies, Inc. ("Starboard"). Because the limits of Smith's automobile liability insurance policy were not sufficient to cover Beahm's damages, he filed a claim for uninsured/underinsured motorist ("UM") coverage with Erie, the insurance company that issued a commercial automobile insurance policy ("the policy") to Starboard. Erie denied Beahm's claim on the ground that he did not qualify for UM coverage under the terms of the policy.

---

[1] Nor would we, in any event. Erie had no right to a cross-appeal. The judgment in the circuit court was entirely in Erie's favor. *See Paolino v. McCormick*, 314 Md. 575, 579 (1989).

## A. The Insurance Policy

Prior to 2000, Beahm operated his information technology consulting business as a sole proprietorship, maintaining a personal automobile insurance policy with Erie for his vehicles. In 2000, Beahm changed his business organization from a sole proprietorship to a corporation and changed the name of the company to Starboard Business Technologies, Inc. Beahm was the company's president and chief executive officer. Until approximately 2017, Starboard had employees other than Beahm, but at the time Beahm sustained his injuries, it did not.

At about the time the business entity changed to a corporation, Beahm met with Nancy Eichhorn of the Eichhorn Insurance Agency, to discuss changes to his insurance policies, including his automobile liability policy. Thereafter, Erie issued a commercial automobile insurance policy. Under "ITEM 1" on the declarations page of the policy, Starboard was listed as the named insured. The parties do not dispute that Beahm signed the Subscriber Agreement for the policy as the "Subscriber." The policy defined the term "Subscriber" as "the person who signed, or the organization that authorized the signing of, the Subscriber's Agreement." "ITEM 8" of the declarations page provided that each auto Erie insured was used in the computer consulting business and "ITEM 9" provided that, unless indicated, the named insured was the sole owner of each automobile insured by Erie. The covered automobiles were registered in Starboard's name. Beahm did not own a personal vehicle.

The policy included an uninsured/underinsured motorists coverage endorsement[2] for Maryland. Under the heading "OUR PROMISE," the endorsement provided:

> "We" will pay damages for bodily injury and property damage that "**you**" or "**your**" legal representative are legally entitled to recover from the owner or operator of an "**uninsured motor vehicle**" or "**underinsured motor vehicle**."

---

[2] The Supreme Court of Maryland has described an endorsement as follows:

> The nature of an endorsement was well described in 2 LEE R. RUSS AND THOMAS F. SEGALLA, COUCH ON INSURANCE 3D § 18:17 (1996):
>
> > "A rider or endorsement is a writing added or attached to a policy or certificate of insurance which expands or restricts its benefits or excludes certain conditions from coverage. When issued in compliance with all requisites, it is a part of the contract to the same extent as if it were actually embodied therein, provided, of course, that it does not violate any statutory provision, and has been lawfully and sufficiently attached to the policy, or referred to in the policy, or both attached and referred to in the policy in accordance with local requirements.
> >
> > When properly incorporated into the policy, the policy and the rider or endorsement together constitute the contract of insurance, and are to be read together to determine the contract actually intended by the parties."
>
> (Footnotes omitted.)
>
> This is entirely consistent with the views we expressed in *Erie Ins. Exchange v. Gosnell*, 246 Md. 724, 731 (1967), that, even when an endorsement is added subsequently, the original policy and the endorsement "are generally to be taken together as an integrated whole." *See also Rocks v. Brosius*, 241 Md. 612 (1966).

*Staab v. Am. Motorists Ins. Co.*, 345 Md. 428, 434-35 (1997).

The policy also included a policy change endorsement for Maryland[3] which defined the terms "you," "your," and "Named Insured" as follows:

> "You," "your" or "Named Insured" means the Subscriber" [sic] named in Item 1. on the Declarations and others named in Item 1. on the Declarations. Except under the GENERAL POLICY CONDITIONS Section, these words include the spouse of an individual(s) named in Item 1. on the Declarations, provided the spouse is a resident of the same house-hold.

## B. The Circuit Court Trial

The case against Erie involved two counts, one for breach of contract based on Erie's denial of insurance coverage to Beahm and the other for negligent misrepresentation based on statements made allegedly by Eichhorn that Beahm would be covered under the policy issued to Starboard. The primary evidence presented by Beahm at trial as to both claims consisted of the insurance policy and Beahm's testimony, which we will review in more detail in our discussion of the questions presented. It is sufficient to note at this point that, as to the breach of contract claim, Beahm claimed that he, as the Subscriber, was entitled to UM coverage under the policy. Erie asserted that, although Beahm signed as the Subscriber, he did so on behalf of Starboard, and only Starboard met the definition of "you," "your," and "Named Insured" under the policy. As to the claim for negligent misrepresentation, Beahm maintained that Eichhorn represented to him that there would

---

[3] The policy change endorsement for Maryland modified the definitions set forth in the policy, which provided:

> "you", "your" and "Named Insured" means the person(s) or organization(s) named in Item 1 on the Declarations. Except in the RIGHTS AND DUTIES – GENERAL POLICY CONDITIONS Section, these words include the spouse of the Subscriber if a resident of the same household.

5

be no change in his policy coverages when he changed from a personal to a commercial automobile insurance policy.

At the close of Beahm's case, Erie moved for judgment on both counts of the complaint. It argued that Beahm was not entitled to coverage under the terms of the policy and that Beahm failed to produce expert testimony or any other evidence to establish a duty owed to him by Erie or a breach of that duty. In granting judgment in favor of Erie on the breach of contract claim, the court found that there was not "sufficient evidence that Mr. Beahm was covered by this policy to generate a question of fact for the jury on that issue. The policy is in the name of Mr. Beahm['s] company and for [it], and not him individually[.]" On the negligent misrepresentation count, the court found that "there was no evidence produced by [Beahm] as to a[n owed] duty of care." The court found also that there was no evidence produced as to Erie's intent that Beahm would act in reliance on Eichhorn's statement, that Erie knew that Beahm "would probably rely" on her statement, or to show that Beahm "justifiably acted in reliance" on her statement.

**STANDARD OF REVIEW**

Beahm contends that the circuit court erred in granting judgment in favor of Erie on the breach of contract and negligent misrepresentation claims. Maryland Rule 2-519(a) provides, in pertinent part, that "[a] party may move for judgment on any or all of the issues in any action at the close of the evidence offered by an opposing party, and in a jury trial at the close of all the evidence." We review without deference a trial court's decision to grant a motion for judgment in a civil case. *Dist. of Columbia v. Singleton*, 425 Md. 398, 406 (2012); *Thomas v. Panco Mgmt. of Md., LLC*, 423 Md. 387, 393-94 (2011). "We

6

conduct the same analysis that a trial court should make when considering the motion for judgment." *Singleton*, 425 Md. at 406-07. In doing so, we construe "'the evidence and reasonable inferences drawn from the evidence in the light most favorable to the non-moving party.'" *Id.* at 407 (quoting *Thomas*, 423 Md. at 393). "If there was 'any evidence, no matter how slight, that was legally sufficient to generate a jury question,' the motion [should be] denied." *Ayala v. Lee*, 215 Md. App. 457, 467 (2013) (quoting *Address v. Millstone*, 208 Md. App. 62, 80 (2012)). "But, where the evidence is not such as to generate a jury question, i.e., permits but one conclusion, the question is one of law and the motion must be granted." *Id.* (quotation marks and citation omitted).

## DISCUSSION

## I.

Beahm contends that he was covered as an insured under the Erie policy. In support of that argument, he points to the definition of the term "Subscriber" as "the person who signed" and to the policy change endorsement's definition of "You," "your," and "Named Insured," as including "the Subscriber named in Item 1. on the Declarations and others named in Item 1. on the Declarations." According to Beahm, because he was the Subscriber, "it logically follows that the Endorsement" included him as an insured. We disagree.

### A. Interpretation of Insurance Policies

In *White Pine Ins. Co. v. Taylor*, 233 Md. App. 479 (2017), we summarized the applicable standards for interpreting insurance policies:

In interpreting the provisions of an insurance policy, we rely on the same principles that we apply to traditional contracts. [A] court's foremost goal in its interpretation of a contract

> is to ascertain and effectuate the intention of the contracting parties, unless the intention is at odds with an established principle of law. The primary source for determining the intention of the parties is the language of the contract itself. Therefore, in construing insurance contracts in Maryland we give the words of the contract their ordinary and accepted meaning, looking to the intention of the parties from the instrument as a whole. Moreover, a contract must be construed as a whole, and effect given to every clause and phrase, so as not to omit an important part of the agreement.
>
> As with any other contract, the court examines the contract language employed by the parties to determine the scope and limitations of the insurance coverage.

*Id.* at 498 (internal quotation marks, citations, and bracketing omitted).

### B. Beahm's Status as an Insured

Beahm's interpretation of the term Subscriber fails to account for the full definition included in the policy. The definition employed the word "or." As a result, in addition to including "the person who signed," the term Subscriber is defined, alternatively, as "the organization that authorized the signing of[] the Subscriber's Agreement." The definition contemplated clearly two distinct situations. When the named insured is an individual, the person who signed the Subscriber Agreement is a subscriber. When the named insured is a business organization (other than a sole proprietorship), it must authorize necessarily an individual to sign the Subscriber Agreement on its behalf. That is what occurred here. The named insured was identified clearly on the declarations page as Starboard, a corporation. Beahm was not identified as a named insured. He was simply the person authorized to sign the Subscriber Agreement on Starboard's behalf.

8

Beahm argues that he must qualify as "You," "your," or a "Named Insured" under the policy because he is the sole stock owner and an employee of Starboard. That argument disregards the corporate form. Beahm changed his business from a sole proprietorship to a corporation. Only the corporation, not Beahm individually, owned the vehicles identified in the policy, was named as an insured, and was entitled to coverage under the terms of the policy. As Erie notes properly, under Beahm's interpretation, any individual authorized to sign a Subscriber Agreement on behalf of a large corporation would receive the benefit of qualifying as a Subscriber and as "You," "your," or "Named Insured" under the policy. That would transform effectively a commercial automobile insurance policy into a personal automobile insurance policy for that one very fortunate individual, while any other officers, directors, and employees of the corporation would be covered only if they qualified for coverage under some other provision of the policy. Such an interpretation is not reasonable.

## C. Beahm's Qualification as an Insured under the Section "Others We Protect"

Beahm may have qualified for UM coverage if he fell into any of the categories set forth in the "Others We Protect" section of the uninsured/underinsured motorists endorsement for Maryland that was included as part of the insurance policy. That section provided:

**OTHERS WE PROTECT**

"We" also protect:

1. Any "**relative**", if "**you**" are an individual.

2. Anyone else, while "**occupying**" any "**owned auto we insure**" other than one being used without the permission of the owner.

9

3.  Anyone else who is entitled to recover damages because of bodily injury to any person protected by this coverage.

4.  If "**you**" are an individual, anyone else while "**occupying**" a "**non-owned auto we insure**" other than:

    a.  one "**you**" are using that is owned by another person residing in "**your**" household.

    b.  one furnished or available for the regular use of "**you**" or anyone residing in "**your**" household.

    c.  one being operated by anyone other than "**you**" or a "**relative**."

Beahm did not qualify, however, for the protection afforded by the "Others We Protect" provision.  Under the clear terms of the policy, "you" and "your" referred to Starboard, the named insured.  For that reason, the protection offered under numbers 1 and 4 was not applicable.  Provision number 3 refers to others entitled to recover damages, not to a person who suffered bodily injury.  In addition, Beahm was not a "person protected by this coverage."  As for provision number 2, it is undisputed that neither Beahm nor Smith were occupying a vehicle owned by Starboard and insured under the insurance policy.  In fact, Beahm was not occupying any vehicle at all at the time he was struck by Smith's vehicle.  Accordingly, Beahm did not qualify as "you," "your," or "Named Insured" under the terms of the policy and he was not entitled to recover UM benefits under the "Others We Protect" provision.

### D.  UM Benefits Under § 19-509 of the Insurance Article

Beahm asserts that under § 19-509 of the Insurance Article ("IN") of the Maryland Code, Erie was required to provide him with UM benefits.  Specifically, he directs our attention to subsection (c), which provides, in part:

(c) In addition to any other coverage required by this subtitle, each motor vehicle liability insurance policy issued, sold, or delivered in the State after July 1, 1975, shall contain coverage for damages, subject to the policy limits, that:

(1) the insured is entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injuries sustained in a motor vehicle accident arising out of the ownership, maintenance, or use of the uninsured motor vehicle[.]

IN § 19-509(c)(1).

The statute provides for two instances when an insurer may exclude the required uninsured motorist coverage:

(f) An insurer may exclude from the uninsured motorist coverage required by this section benefits for:

(1) the named insured or a family member of the named insured who resides in the named insured's household for an injury that occurs when the named insured or family member is occupying or is struck as a pedestrian by an uninsured motor vehicle that is owned by the named insured or an immediate family member of the named insured who resides in the named insured's household; and

(2) the named insured, a family member of the named insured who resides in the named insured's household, and any other individual who has other applicable motor vehicle insurance for an injury that occurs when the named insured, family member, or other individual is occupying or is struck as a pedestrian by the insured motor vehicle while the motor vehicle is operated or used by an individual who is excluded from coverage under § 27-609 of this article.

IN § 19-509(f).

Beahm maintains that neither of the exclusions in subsection (f) apply to him and that Erie was not permitted to deny him UM coverage either because the policy was a commercial policy or because he was injured while a pedestrian. Beahm is mistaken. There was no evidence that Erie denied Beahm UM coverage based on an exclusion. Erie denied Beahm UM coverage because he did not qualify as an insured under the policy.

11

Erie was required to provide UM coverage to insureds under the policy, not to third-parties. *Md. Auto. Ins. Fund v. Baxter*, 186 Md. App. 147, 160 (2009) (recognizing that the statute requires UM coverage for persons insured under the policy, not third-parties). As Beahm was not an insured under the terms of the policy, Erie did not err in denying him coverage.

For these reasons, the circuit court did not err in granting judgment in favor of Erie on the breach of contract claim.

## II.

Beahm contends that the circuit court erred in granting judgment in favor of Erie on the negligent misrepresentation claim. To establish a claim for negligent misrepresentation, a plaintiff must show that: (1) the defendant, owing a duty of care to the plaintiff, asserted negligently a false statement; (2) the defendant intended that the plaintiff would act upon the statement; (3) the defendant knew that the plaintiff would rely probably on the statement and that the plaintiff would suffer loss or injury if the statement was erroneous; (4) the plaintiff took action justifiably in reliance on the statement; and (5) the plaintiff suffered damages caused proximately by the defendant's negligence. *See Access Funding, LLC v. Linton*, 482 Md. 602, 655 (2022); *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 135-36 (2007); *Cooper v. Berkshire Life Ins. Co.*, 148 Md. App. 41, 57 (2002).

### A. *In the Circuit Court*

In his amended complaint, Beahm alleged that Erie "assured [him] that he would be covered under the policy issued to Starboard[.]" At trial, Beahm testified that, prior to 2000, he had a personal automobile insurance policy with Erie. In 2000, when Beahm formed Starboard, he and Eichhorn met for several hours and discussed automobile and

12

other insurance coverages.  Eichhorn told Beahm that he needed to change his "policy to reflect the company" because "the vehicle was registered in the company's name." Assertedly, Beahm told Eichhorn:

> I wanted the same coverage that I had with my personal vehicles because it was very good coverage and I was always very happy with the coverage.  But I wanted to expand on the uninsured and underinsured aspect of it because I had employees that were going to be driving my vehicles and I wanted to make sure that not only were my employees protected but my partners and myself were protected as well.

When asked if Eichhorn told him there would be changes in the automobile insurance coverage, Beahm testified:

> None – well, I asked her specifically to make the coverage the same that I had.  So, no, she did not tell me there would be any changes to the policy.

Beahm "assumed all coverages were the same."  In support of his contention that Eichhorn told him there would not be any change in the coverage provided, Beahm offered, and the court admitted in evidence, plaintiff's exhibit 3, a letter from Eichhorn to Beahm, dated 12 October 2000, which provided, in part:

> Per our conversation of yesterday, enclosed please find the signature application form which confirms the change in the organization of your business from a sole proprietorship to a corporation.  I believe you will find this self-explanatory; I have written across the page that there is no change to your policy coverages or format due to your re-organization.

The attached form contained the words "General Liability App" in the upper left hand corner and indicated that the policy's effective dates were from 27 November 1999 through 27 November 2000.  The following was handwritten across the center of the application:

13

Signature application only to confirm change in entity from sole proprietorship to corporation – No change in coverages. Formerly, Jeffrey G. Beahm.

Beahm testified that Eichhorn never told him that she did not represent Erie. The court admitted in evidence, as plaintiff's exhibit 4, photographs of Eichhorn's office that included an Erie Insurance/Eichhorn Insurance Agency sign in front of the building. Beahm testified further as follows:

[COUNSEL FOR ERIE:] . . . Mr. Beahm, . . . you've dealt with [the Eichhorn Agency] for – is it fair to say roughly 22, 23 years, something in that range?

[BEAHM:] Longer, yes.

Q Okay. And in doing so, you knew that they were an independent agency, didn't you?

A Well, I knew how insurance companies work. I'm a business. So, yes, I did know that.

Q Okay. So I understand they've got an Erie sign outside. No question about that. But you know they write for other people as well as other companies as well.

A Actually, I did not know that.

Q Okay.

A Well, I did not know that at the time. I know it now but I did not know that at the time.

In support of its motion for judgment, Erie asserted that Beahm failed to establish a duty and a breach of that duty. Erie argued that the court had not heard testimony from

Eichhorn[4,5] or anyone else about "the actual responsibilities of a person in [Eichhorn's] position, you know, selling an insurance policy. No details." The circuit court agreed and granted judgment in favor of Erie.

### B. Beahm's Contentions

In support of his challenge to the court's decision to grant judgment on the negligent misrepresentation claim, Beahm directs our attention to three cases, the first of which is *Sadler v. Loomis Co.*, 139 Md. App. 374 (2001). In *Sadler*, we examined the distinctions between insurance advisers, agents, and brokers,[6] and concluded that "'[w]hether a person

---

[4] Neither Eichhorn nor anyone else from the Eichhorn Insurance Agency was called to testify at trial.

[5] Appellee observes that Beahm filed a separate claim against Eichhorn and the Agency in the circuit court. That suit was stayed, pending the outcome of the trial in the present litigation.

[6] We take note of the fact that the current version of the law employs different terminology. Specifically, IN § 1-101 contains definitions for "Insurance producer" and "Independent insurance producer." An "insurance producer" is defined, in part, as

> a person that, for compensation, sells, solicits, or negotiates insurance contracts, including contracts for nonprofit health service plans, dental plan organizations, and health maintenance organizations, or the renewal or continuance of these insurance contracts for:
>     (i) persons issuing the insurance contracts; or
>     (ii) insureds or prospective insureds other than the insurance producer.

IN § 1-101(u)(1).

> An "Independent insurance producer" is defined as an insurance producer:
>
> (1) that is not owned or controlled by an insurer or group of insurers;
> (2) the appointment of which does not prohibit the representation of more than one insurer or group of insurers; and

(continued…)

15

is a broker or an agent is determined not by what he is called but by what he does.'" *Id.* at

395 (quoting *Med. Mut. Liab. Ins. Soc'y of Md. v. Mut. Fire, Marine & Inland Ins. Co.*, 37

Md. App. 706, 714 (1977)). Beahm also points to *Cigna Prop. & Cas. Cos. v. Zeitler*, 126

Md. App. 444, 463-69 (1999), in support of his assertion that he was not required to

produce expert testimony to prove an insurance agent's liability for failing to procure

proper coverage. In *Zeitler*, we held that expert testimony was not required because the

broker's duty toward the insured was not beyond the ken of the average layman. *Id.* at 469.

Lastly, Beahm directs our attention to *Popham v. State Farm Mut. Ins. Co.*, 333 Md.

136 (1993), for the proposition that the negligent failure of an insurance agent to exercise

the requisite skill and care can be attributed to an insurer such as Erie. In *Popham*, the

Supreme Court of Maryland considered whether an allegation by an insured, Mr. Popham,

that an insurer, State Farm, and its agent, Mr. Menage, failed to advise him that he could

purchase certain insurance coverage, stated a cognizable claim in negligence. *Id.* at 138.

In determining that the complaint stated a cause of action in negligence against both the

agent and State Farm, the Court commented on the relationship between the two as follows:

> In this case, Menage procured an excess or umbrella policy providing
> motor vehicle liability insurance presumably in the amount Popham
> requested. He did not, however, Popham alleges, offer Popham orally or
> otherwise, an opportunity to contract for the same amount of uninsured

---

(3) the appointment of which provides that:
    (i) at termination, the records of the insurance producer remain the
property of the insurance producer; and
    (ii) the insurance producer retains the use and control of all expirations
incurred during the period when the appointment was in effect.

IN § 1-101(q).

motorist coverage. Because it appears that State Farm offered excess uninsured motorist coverage, to the extent that allegation encompasses Menage's failure to advise Popham concerning uninsured motorist coverage, including telling him that he could obtain an equal amount of uninsured motorist coverage as liability coverage, a trier of fact could conclude that Menage failed to exercise the requisite skill and care of an insurance agent in that regard. And, since Menage is a captive agent for State Farm, *see* Art. 48A, §166; *American Casualty Company of Reading, Pa. v. Ricas*, 179 Md. 627, 631 (1941) (distinguishing insurance broker or solicitor from insurance agent); *see also* Art. 48A, § 166, he could bind State Farm, and, so, his negligence is attributed to State Farm. Moreover, "'the general rule is that the corporate officers *or agents* are personally liable for those torts which they personally commit, or which they inspire or participate in, even though performed in the name of an artificial body.'" Consequently, the complaint sets forth a cause of action in negligence against both Menage and State Farm.

*Id.* at 156-57 (footnotes and some citations omitted) (emphasis in original).

Based on these cases, Beahm asserts that, in order to establish the existence of a duty on the part of Erie, he had to "put forth evidence that a false statement was negligently made by Eichhorn, an Erie agent, in the context of a business or professional relationship, wherein he had a right to rely upon her for information." He claims he did that. Specifically, Beahm points to his testimony that: he had a long-standing relationship with Eichhorn and the Eichhorn Insurance Agency; his belief that Eichhorn represented Erie; the sign outside Eichhorn's office; and various self-identifications by Eichhorn and the Eichhorn Insurance Agency that they were agents, as sufficient evidence to establish a duty "to speak with reasonable care[.]" Beahm maintains that by imputing Eichhorn's statements to Erie, he provided sufficient evidence that Erie made a negligent misrepresentation to him about the UM coverage offered under the commercial automobile insurance policy. We are not persuaded.

17

### C. *Attributing Eichhorn's Alleged Negligent Misrepresentations to Erie*

It is important to bear in mind that Beahm's negligent misrepresentation claim was filed against Erie, not Eichhorn or the Eichhorn Insurance Agency, although he claimed that the alleged misrepresentation was made by Eichhorn. Beahm failed to establish that Erie had any ownership or control over Eichhorn or the Eichhorn Insurance Agency or that statements made allegedly by Eichhorn could be attributed to Erie. In *Popham*, Menage was a captive agent for State Farm. Black's Law Dictionary defines a captive insurance company, in part, as a "company that insures the liabilities of its owner." *Captive insurance company*, BLACK'S LAW DICTIONARY (11th ed. 2019). Beahm did not offer any evidence to show that the Eichhorn Insurance Agency was owned by Erie or was a captive of Erie. In fact, the evidence of the relationship between the Eichhorn Insurance Agency and Erie was quite limited. It included the photograph of the Erie Insurance/Eichhorn Insurance Agency sign outside the office building where the Eichhorn Insurance Agency was located. In addition, Beahm testified that he was a business owner, that he understood how insurance companies worked, and that he was aware that the Eichhorn Insurance Agency was an independent insurance agency. That evidence was not sufficient to establish that Eichhorn spoke on behalf of Erie or to attribute her alleged negligent misrepresentation to Erie. For that reason, the circuit court did not err in granting judgment in favor of Erie on the negligent misrepresentation count.

**JUDGMENTS OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED; COSTS TO BE PAID BY APPELLANT.**